IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LETIA BALLARD, | ) Case No. 5:21-cv-539 |
| | ) |
| Plaintiff, | ) |
| | ) MAGISTRATE JUDGE |
| v. | ) THOMAS M. PARKER |
| | ) |
| COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) **MEMORANDUM OPINION AND** |
| | ) **ORDER**[1] |
| Defendant. | ) |

Plaintiff, Letia Ballard, seeks judicial review of the final decision of the Commissioner of Social Security, denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. Ballard challenges the Administrative Law Judge's ("ALJ") negative findings, contending that the ALJ failed to adequately explain his reasons for finding unpersuasive the opinion of Ballard's treating physician, Jean Dib, MD. Although the ALJ's explanation for finding Dr. Dib's opinion unpersuasive arguably failed to comply with the regulations, the error was harmless because the opinion was patently deficient. Thus, the Commissioner's final decision denying Ballard's applications for DIB and SSI must be affirmed.

---

[1] This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and the parties consented to my jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. ECF Doc. 11.

I. **Procedural History**

Ballard applied for DIB and SSI on June 5, 2019.[2] (Tr. 213, 220).[3] Ballard alleged that she became disabled on December 31, 2016, because of: "1. Arthritis; 2. Unspecified autoimmune disease; 3. IBS; 4. [A]nxiety; 5. Manic depressive disorder/bipolar disorder; 6. Migraine; [and] 7. Degenerative disc disease." (Tr. 213, 220, 235). The Social Security Administration denied Ballard's application initially and upon reconsideration. (Tr. 78-105, 108-39). Ballard then requested an administrative hearing. (Tr. 160).

ALJ Louis Aliberti heard Ballard's case on July 22, 2020 and denied her claim in an August 26, 2020 decision. (Tr. 15-25, 31-61). In doing so, the ALJ determined at Step Four of the sequential evaluation process that Ballard had the residual functional capacity ("RFC") to perform sedentary work except that:

> [H]andling and fingering is limited to frequent bilaterally. [Ballard] can climb ramps and stairs frequently, never climb ladders, ropes, or scaffolds, balance frequently, stoop frequently, kneel frequently, crouch frequently, [and] crawl frequently. [Ballard] can never work at unprotected heights, never [*sic.*] moving mechanical parts. She is able to perform simple, routine and repetitive tasks and is limited to occasional and superficial interaction with others.

(Tr. 20).

Based on vocational expert testimony that an individual with Ballard's age, experience, and RFC could perform other work as document preparer, table worker, and film inspector, the ALJ determined that Ballard was not disabled. (Tr. 24-25). On January 12, 2021, the Appeals Council declined further review, rendering the ALJ's decision the final decision of the

---

[2] There is a disparity between the date of filing on Ballard's applications for DIB (June 6, 2019) and SSI (June 20, 2019) and the administrative decisions (June 5, 2019). Because neither party disputes the accuracy of the ALJ's description of the filing date and the disparity is immaterial to our review, the court assumes that June 5, 2019 is the date of filing for Ballard's applications.
[3] The administrative transcript appears in ECF Doc. 10.

Commissioner. (Tr. 1-3). On March 9, 2021, Ballard filed a complaint to obtain judicial review. ECF Doc. 1.

## II. Evidence

### A. Personal, Educational, and Vocational Evidence

Ballard was born on February 20, 1987 and was 29 years old on the alleged onset date. (Tr. 78, 213, 220). Ballard completed two years of college and had specialized training as a nursing assistant. (Tr. 236). Ballard had prior work experience as a home health aide, assistant manager, crew member, cashier, laborer, and nurse assistant, all of which the ALJ determined she could no longer perform. (Tr. 23-24); *see* (Tr. 35-45, 54-55, 237, 303).

### B. Relevant Medical Evidence

Ballard focuses her challenge upon the ALJ's Step Four consideration of the opinion evidence of limitations attributable to her physical impairments; thus, the court will summarize only the relevant medical and opinion evidenced related to Ballard's physical impairments. *See generally* ECF Doc. 13.

On April 11, 2016, Ballard visited Jean Dib, MD, to follow up on knee, shoulder, and back pain that did not respond to over-the-counter medication. (Tr. 357). She also reported weight gain (231 lbs.. and a BMI of 40.92). *Id.* Ballard's medications included Diltiazem, Topamax, a Medrol Pak, Cefdinir, and Meloxicam. *Id.* On physical examination, Ballard had knee crepitus, decreased shoulder range of motion, and Heberden's and Bouchard's nodes. *Id.* Dr. Dib assessed Ballard with polyosteoarthritis and prescribed Tylenol, 325 mg. *Id.*

On April 25, 2016, Ballard reported to Dr. Dib improvement with her current treatment. (Tr. 353). Previous lab work results were negative for rheumatoid arthritis. *Id.* On physical examination, Ballard had unremarkable results. (Tr. 356). Dr. Dib continued Ballard's

medication treatment with Meloxicam and Tylenol.  (Tr. 353).  During a follow up on May 23, 2016, Ballard reported continued improvement and was noted to be "stable."  (Tr. 351).

On October 20, 2016, Ballard visited Dr. Dib following a visit to the emergency department for severe cervicalgia.  (Tr. 349).  Ballard reported that she was "getting better" since her emergency room visit and was otherwise "doing well."  *Id.*  Dr. Dib referred Ballard to physical therapy.  *Id.*

On November 3, 2016, Ballard reported to Dr. Dib with "severe bilateral carpal tunnel syndrome," migraine headaches, and obesity (247 lbs. and a BMI of 43.75).  (Tr. 347).  Dr. Dib assessed Ballard with chronic migraine without aura, not intractable, without status migrainosus, obesity, and carpal tunnel syndrome, unspecified upper limb.  *Id.*

On November 15, 2016, Ballard underwent an EMG/nerve conduction study.  (Tr. 384).  Ballard reported pain, swelling, and hand stiffness for a "number of years," which was aggravated by fine motor tasks.  *Id.*  She also reported occasional numbness in the morning.  *Id.*  On physical examination, Ballard had unremarkable results except obesity and localized wrist pain.  (Tr. 384-85).  The results of the nerve conduction study showed borderline electrophysiologic evidence of carpal tunnel syndrome in her wrists, with her right upper extremity being more symptomatic.  (Tr. 385).

On December 1, 2016, Ballard returned to Dr. Dib, reporting that she had lost 7 lbs. but had been suffering from constipation since starting diet pills.  (Tr. 345).  On physical examination, Ballard had a positive Tinel's sign.  (Tr. 346).  Dr. Dib assessed Ballard with obesity (BMI of 42.51), carpal tunnel syndrome, and constipation.  (Tr. 345).  Dr. Dib refilled her diet pill medication and prescribed a splint.  *Id.*

4

On December 20, 2016, Ballard visited Andrew Stalker, MD, for her headaches. (Tr. 323). Ballard reported that she'd had headaches for nine years, which sometimes radiated into her left eye and caused ringing in her ear and occasional light and sound sensitivity. *Id.* Ballard also reported that her most severe headaches occurred once per week. *Id.* A review of symptoms was positive for nausea, vomiting, dizziness, headache, tremors, back pain, joint pain, and muscle weakness. (Tr. 325). On physical examination, Ballard had unremarkable results except obesity (BMI of 43.71) and two out of four symmetrical deep tendon reflexes. (Tr. 325-26). Dr. Stalker assessed Ballard with migraines, prescribed Topamax, and ordered a CT scan. (Tr. 326).

On December 30, 2016, Ballard underwent CT testing, the results of which showed no evidence of acute intracranial abnormality. (Tr. 328).

On January 2, 2017, Ballard reported to Dr. Dib that she had lost another 12 lbs. (Tr. 343). Dr. Dib refilled her diet pill medication. *Id.* During a January 20, 2017 follow up, Ballard's stated she had not lost any weight, though her weight had dropped to 232 lbs. (Tr. 341).

On January 25, 2017, Ballard returned to Dr. Stalker, reporting worsening headaches due to lack of sleep, blurred vision, and light and sound sensitivity. (Tr. 319). On physical examination, Ballard had unremarkable results. (Tr. 321). Dr. Stalker continued her medication treatment. (Tr. 321-22).

On April 24, 2017, Ballard visited Dr. Dib, reporting that her headaches had been getting better with her current treatment. (Tr. 339). On physical examination, Ballard had unremarkable results. *Id.* Dr. Dib continued her Topamax medication treatment. *Id.*

On April 28, 2017, Ballard visited Dr. Stalker for a follow up. (Tr. 315). A review of symptoms was positive only for muscle pain. (Tr. 317). Dr. Stalker noted that Ballard was "[d]oing well" and continued her medication treatment as prescribed. *Id.*

On September 11, 2018, Ballard returned to Dr. Dib, reporting severe abdominal pain, diarrhea, and chronic pain syndrome. (Tr. 337). She also reported worsening hip and knee pain. *Id.* On physical examination, Ballard had diminished bowel sounds and epigastrium tenderness. (Tr. 337-38). Dr. Dib assessed Ballard with obesity (BMI of 40.38), unspecified diarrhea and abdominal pain, and low back pain. (Tr. 337). Dr. Dib referred Ballard to pain management. *Id.*

On September 18, 2018, Ballard reported to Dr. Ballard with worsening diarrhea. (Tr. 333). Dr. Dib referred Ballard for a colonoscopy. *Id.*

On January 23, 2019, Ballard visited David Gutlove, MD, for a back pain consultation. (Tr. 459). Ballard reported back pain since she was nine years old. *Id.* Ballard described her pain as: (i) located in her low back; (ii) 5/10 in intensity; (iii) characterized by aching, radiation into her hips, shoulders, and neck, and numbness in her hands and feet; and (iv) worsened by "activity." *Id.* On physical examination, Ballard had: (i) difficulty with deep knee bending and pain with lumbar extension; (ii) tenderness along her lumbar, thoracic, cervical paraspinous, and shoulder stabilizing muscles; and (iii) decreased cervical spine rotation. (Tr. 461). Dr. Gutlove diagnosed Ballard with back pain, degenerative disc disease, and hip pain. *Id.* Ballard was additionally diagnosed with myofascial pain syndrome, hypertension, chronic pain syndrome, and migraine headaches. *Id.* Dr. Gutlove ordered x-ray testing, prescribed Ballard a TENS unit, and referred Ballard to physical therapy. *Id.*

On March 12, 2019, Ballard visited Diana Hunter, CNS, for an evaluation of her abdominal pain, diarrhea, heartburn, and nausea. (Tr. 397). Ballard reported moderate-to-severe

abdominal pain that occurred randomly and radiated to her back.  *Id.*  She reported moderate diarrhea symptoms, with three bowel movements per day.  *Id.*  Ballard reported that her heartburn occurred at random and that her nausea was persistent.  *Id.*  On physical examination, Ballard had decreased breath sounds, abdominal tenderness, and lower extremity edema.  (Tr. 398-99).  Nurse Hunter diagnosed Ballard with irritable bowel syndrome ("IBS"), dysphagia, and gastroesophageal reflux disease ("GERD").  (Tr. 399).  Nurse Hunter ordered a colon endoscopy and prescribed calprotectin and pantoprazole.  *Id.*

On March 15, 2019, Ballard underwent endoscopic examination, the results of which showed a small hiatal hernia and small gastritis.  (Tr. 405).  On March 21, 2019, Ballard underwent x-ray testing, the results of which were unremarkable.  (Tr. 463 (hip), 465 (lumbar spine), 467 (cervical spine), 469 (thoracic spine)).

On March 27, 2019, Ballard visited Dr. Gutlove for a follow up after receiving the results of her x-ray testing.  (Tr. 456).  She reported that her TENS unit was helping but that her pain was 6/10 in intensity.  (Tr. 456, 458).  On physical examination, Ballard had unremarkable results.  (Tr. 457).  Dr. Gutlove prescribed Robaxin and referred Ballard to a rheumatologist.  *Id.*

On April 9, 2019, Ballard returned to Nurse Hunter for a follow up after receiving the results of her endoscopic testing.  (Tr. 393).  A "review of systems" was positive for malaise, weight loss, dyspnea, edema, headaches, back pain, joint pain, and myalgia.  (Tr. 393-94).  On physical examination, Ballard had decreased breath sounds, asymmetric abdominal distension, and abdominal tenderness.  (Tr. 394).  Nurse Hunter noted that Ballard's acid reflux was improving with medication and ordered further diagnostic testing.  (Tr. 395).

On April 13, 2019, Ballard underwent ultrasound testing of her abdomen, the results of which were unremarkable.  (Tr. 415).  On April 24, 2019, Ballard underwent a colonoscopy, the

results of which were unremarkable except for the presence of five polyps. (Tr. 401). The examining physician diagnosed Ballard with benign neoplasm of the sigmoid colon and rectum status post polypectomy. *Id.*

On May 20, 2019, Ballard visited Alexander Hannan, DO, for a rheumatology consultation. (Tr. 426). Ballard reported widespread inflammatory arthritis, enthesitis, and pleurisy. *Id.* Specifically, Ballard reported: (i) a history of small joint inflammatory arthritis with joint pain, swelling, and warmth in her hands and elbows; (ii) left Achilles enthesitis; and (iii) a history of pleurisy, though she has not had any associated symptoms since her diagnosis "several years ago." *Id.* On physical examination, Ballard had mild warmth erythema, tender MCP and PIP joints, and tender and warm left Achilles tendon and ankle and right MTP joint. (Tr. 429-30). Dr. Hannan diagnosed Ballard with inflammatory polyarthritis, vitamin D deficiency, and pleurisy. (Tr. 430). Dr. Hannan ordered x-ray testing and referred Ballard to physical therapy. *Id.*

On May 21, 2019, Ballard visited Nurse Hunter, reporting ongoing abdominal pain. (Tr. 389). A "review of systems" was positive for malaise, constipation, heartburn, nausea, back pain, joint pain, and myalgia. (Tr. 389-90). On physical examination, Ballard had unremarkable results. (Tr. 390). Nurse Hunter prescribed Xifaxan and continued her medication treatment. (Tr. 390-91).

On May 29, 2019, Ballard underwent x-ray testing, the results of which were unremarkable. (Tr. 373 (knees), 374 (feet), 375 (sacroiliac joints), 376 (hands)).

On June 3, 2019, Ballard visited Olivia Glavac, PT, for a physical therapy evaluation. (Tr. 444-49). Ballard reported widespread pain in her cervical, shoulder, lumbar, and hip areas and tingling and numbness in her hands and feet. (Tr. 445, 447). On physical examination,

Ballard ambulated without difficulty and had: (i) decreased shoulder range of motion; (ii) decreased cervical and lumbar flexion, extension, and rotation; (iii) decreased hip flexion; (iv) decreased knee flexion and extension; (v) 2/5 trunk flexor strength; (vi) 3+/5 shoulder rotator strength; and (vii) between 4-/5 and 5/5 strength in her other areas.  (Tr. 446-47).

On June 4, 2019, Ballard returned to Dr. Hannan, reporting no improvement in her symptoms, and instead reporting worse swelling in her wrists and MCP joints.  (Tr. 422).  She also reported lower back and shoulder pain.  *Id.*  On objective examination, Ballard's results were similar to those of her May 20, 2019 visit.  (Tr. 424).  Dr. Hannan prescribed hydroxychloroquine and ergocalciferol.  (Tr. 424-25).

On June 26, 2019, Ballard visited Dr. Gutlove, reporting her pain as 5/10 in intensity.  (Tr. 452, 454).  She also reported no relief from physical therapy.  (Tr. 455).  On physical examination, Ballard had unremarkable results.  (Tr. 454).  Dr. Gutlove prescribed Norco and ordered MRI testing.  *Id.*

On July 18, 2019, Ballard returned to Dr. Hannan, reporting partial improvement with Plaquenil.  (Tr. 507).  She reported her pain as 4/10 in intensity.  (Tr. 508).  On physical examination, Ballard's results were similar to her previous two visits.  (Tr. 509).  Dr. Hannan continued Ballard's medication treatment.  (Tr. 509-10).

On August 9, 2019, Ballard underwent MRI examination of the lumbar spine, the results of which showed minimal disk desiccation at L4-L5 and L5-S1 and mild facet arthropathy.  (Tr. 601-02, 662).  On August 12, 2019, Ballard underwent MRI examination of her hip, the results of which showed minimal gluteal tendinopathy.  (Tr. 660-61).

On August 14, 2019, Ballard visited Dr. Gutlove, reporting continued pain rated at 5/10.  (Tr. 503-04).  On physical examination, Ballard had unremarkable results.  (Tr. 505).

9

Dr. Gutlove recommended trigger point injections and lumbar medical branch blocks, but Ballard wanted to follow up with Dr. Hannan. *Id.*

Meanwhile, between June 3, 2019 and August 29, 2019 Ballard attended physical therapy sessions with Carol Bonamico, PT. (Tr. 442-49, 521-53).

On September 19, 2019, Ballard presented to Dr. Hannan for a follow up, reporting pain in her right leg and wrist. (Tr. 499). Ballard rated her pain as 4/10 in intensity. (Tr. 500). On physical examination, Ballard's results were similar to her previous three visits. (Tr. 501). Dr. Hannan noted that Plaquenil had failed but continued her medication treatment and prescribed prednisone. (Tr. 499, 502).

On September 25, 2019, Ballard visited Nurse Hunter, reporting moderate diarrhea of variable frequency. (Tr. 616). She reported that Xifaxan did not improve her symptoms although there was some improvement with Plaquenil. *Id.* On physical examination, Ballard had unremarkable results except obesity (BMI between 45.0-49.9). (Tr. 616-17). Dr. Hunter educated Ballard on diet modification. (Tr. 617).

On January 23, 2020, Ballard visited Dr. Dib, reporting that her heart palpitations had resolved. (Tr. 639). Dr. Dib ordered bloodwork. *Id.* On January 30, 2020, based on the results of the bloodwork, Dr. Dib assessed Ballard with hyperlipidemia and hyperglycemia. (Tr. 637).

On February 20, 2020, Ballard presented to Dr. Dib with severe right knee pain. (Tr. 635). On physical examination, Ballard had knee crepitus. (Tr. 636). Dr. Dib diagnosed Ballard with prepatellar bursitis of the right knee and administered a Kenalog injection. (Tr. 635).

On June 11, 2020, Ballard reported to Dr. Dib for a follow up on a lupus-like autoimmune disease and severe arthralgia. (Tr. 669). Dr. Dib assessed Ballard with lupus

10

arthritis and continued her treatment with Plaquenil. *Id.* He also completed Ballard's disability paperwork. *Id.*

### C. Relevant Opinion Evidence

#### 1. Treating Source - Jean Dib, MD

On June 10, 2020, Dr. Dib completed a form provided by Ballard's attorney concerning Ballard's ability to do work-related activities. (Tr. 667-68). The form was a single page with short answer question prompts and check boxes. (Tr. 668). Dr. Dib's checked answers expressed his opinion that: (i) Ballard could not perform a full-time job on a regular and continuing basis; (ii) Ballard could stand/walk two hours in an eight-hour workday; (iii) Ballard could sit less than two hours in an eight-hour workday; (iv) Ballard could lift/carry less than ten pounds occasionally or frequently; (v) Ballard required the ability to shift between sitting/standing/walking at will; (vi) Ballard needed to lie down at unpredictable times; and (vii) Ballard would be absent from work more than four times per month. *Id.* In the prompt for additional limitations, Dr. Dib seemingly drew a line, apparently indicating no other limitations. *Id.*

Dr. Dib's short-answer responses indicated that: (i) he had been treating Ballard for "years"; (ii) Ballard's diagnoses included autoimmune disease with lupus-like feature; and (iii) Ballard's symptoms included arthralgia and joint pain. *Id.* In the prompt asking for his objective findings, Dr. Dib wrote "see notes." *Id.* Attached to Dr. Dib's opinion were his June 2020 treatment notes, which stated that the "Reason for Appointment" was "1. ov per JDD/96.2 to complete disability paperwork," and assessed Ballard with the diagnosis of "Lupus arthritis – M32.9 (Primary)," but which had no remarkable objective exam findings. (Tr. 669).

11

### 2. State Agency Consultants

On August 10, 2019, Gary Hinzman, MD, evaluated Ballard's physical capacity based on a review of the medical record and determined that Ballard could perform light work. (Tr. 85-87, 90). Specifically, Dr. Hinzman determined that Ballard could: (i) lift 20 lbs. occasionally and 10 lbs. frequently; (ii) sit/stand/ walk 6 hours in an 8-hour workday; (iii) frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; (iv) never climb ladders/ropes/scaffolds; and (v) frequently handle and finger. (Tr. 86-87). On December 16, 2019, Maria Congbalay, MD, concurred with Dr. Hinzman's assessment. (Tr. 116-18).

### D. Relevant Testimonial Evidence

Ballard testified at the ALJ hearing that she stopped working in April 2019 because she started to feel her legs giving out on her as she walked up stairs, which was her most significant barrier to work. (Tr. 37, 45). She testified that her knee would also swell up to the point where she would have difficulty driving. (Tr. 45). And she testified that her IBS was unpredictable and would cause her to leave or miss work, with episodes lasting between two hours to three days. *Id.* Her IBS sometimes caused her to be in the bathroom up to 6 times per day for up to 20 minutes. (Tr. 52). She had an IBS episode at least once per week. (Tr. 52-53).

Ballard testified she would also get unpredictable migraines, random pains from her degenerative disc disease, and difficulty using her hands due to swelling and numbness. (Tr. 46). Ballard stated that her pain on a typical day was 4/10 and 8/10 at its worst. *Id.* On a good day, of which she had 4 to 5 per month, she could maybe lift 20 lbs. (Tr. 47, 52). She had bad days ten days per month due to her mental health. (Tr. 52).

Ballard testified that she would need to sit down and rest after 15 to 20 minutes for an equal amount of time. (Tr. 50). She could sit for 20 minutes to an hour before needing to move

12

for 5 to 10 minutes or lie down for 10 to 15 minutes. (Tr. 50-51). She could not sit more than 15 minutes without pain. (Tr. 51). And when her hands swelled up, she could not open anything. *Id.*

Ballard testified that her daily routine consisted of getting up, going to the bathroom, making coffee, sitting, and playing with her 3 children, and doing household chores with assistance from her 13-year-old. (Tr. 47-49). Because of her autoimmune disease, she did not go out and did not sleep well. (Tr. 48).

Vocational expert ("VE") Brett Salkin testified that an employer would not accommodate an additional break of at least ten minutes in length outside those already provided. (Tr. 58-59). An employer also would not tolerate unscheduled breaks to lie down. (Tr. 59). And there was no sit/stand option for sedentary jobs. *Id.*

### III. Law & Analysis

#### A. Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). And, even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision still cannot be overturned "'so long as substantial evidence also supports the conclusion reached by the ALJ.'" *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Jones*, 336 F.3d at 477); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to

13

support a conclusion.'"). But, even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."). And the court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked.").

  **B.**  **Weighing of the Opinion Evidence**

Ballard argues that the ALJ failed to apply proper legal standards in his evaluation of Dr. Dib's opinion.[4] ECF Doc. 13 at 10-15. Ballard argues that the ALJ failed to apply proper legal standards because the ALJ failed to sufficiently articulate how he considered the supportability and consistency of his opinion. ECF Doc. 13 at 12. Ballard argues that Dr. Dib's opinion is consistent with her subjective symptom complaints to other physicians and with her testimony, consistent with Dr. Hannan's objective exam findings, and not inconsistent with EMG/nerve conduction study and MRI examination results. ECF Doc. 13 at 12-14. She argues the error was harmful because her IBS, migraines, and need to lie down would exceed the amount of off-task time the VE testified an employer would tolerate. ECF Doc. 13 at 14-15.

---

[4] The court notes that throughout her brief, Ballard refers to her treating physician as "Dr. Deb" and her treating rheumatologist as "Dr. Hannon." Both are incorrect. The correct names are Jean *Dib*, MD, and Alexander *Hannan*, DO. *E.g.*, (Tr. 33, 442).

14

The Commissioner responds that the ALJ could, consistent with the regulations, discount Dr. Dib's opinion on the basis that it lacked supporting explanation. ECF Doc. 15 at 7-8. The Commissioner argues that the ALJ also noted that the limitations contained in Dr. Dib's opinion were not consistent with objective findings in the record or Dr. Dib's treatment notes and the Commissioner cites treatment notes from Dr. Dib reflecting largely unremarkable findings. ECF Doc. 15 at 8-9. The Commissioner argues that Ballard cannot rely on treatment notes that Dr. Dib did not rely on to establish that his opinion was supported and that the ALJ was not required to discuss each and every treatment note. ECF Doc. 15 at 9. The Commissioner further argues that the ALJ discussed the evidence Ballard relies on in his summary of the evidence, from which the Commissioner infers findings consistent with the ALJ's conclusion. ECF Doc. 15 at 9-11. The Commissioner argues that Dr. Dib's opinion on off-task behavior, absences, and breaks is tantamount to an opinion on the ultimate issue of disability. ECF Doc. 15 at 11.

At Step Four of the sequential evaluation process, the ALJ must determine a claimant's RFC after considering all the medical and other evidence in the record. 20 C.F.R. § 404.1520(e). In doing so, the ALJ is required to "articulate how [he] considered the medical opinions and prior administrative medical findings." 20 C.F.R. § 404.1520c(a). At a minimum, the ALJ must explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2)[5]. According to the regulation, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinion will be. This is the consistency standard. And the regulation specifies that the more relevant the objective medical

---

[5] Other factors include: (1) the length, frequency, purpose, extent, and nature of the source's relationship to the client; (2) the source's specialization; and (3) "other factors," such as familiarity with the disability program and other evidence in the record. 20 C.F.R. § 404.1520c(c)(3)-(5).

15

evidence and supporting explanations presented by a medical source are to support his or her medical opinion, the more persuasive the medical opinion will be.  This is the supportability standard.  See 20 C.F.R. § 404.1520c(c)(1)-(2).

      The ALJ arguably failed to apply proper legal standards in finding Dr. Dib's opinion unpersuasive.  42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241.  The ALJ found Dr. Dib's opinion unpersuasive because "it is not supported by explanation and it is not consistent with the physician's own treatment notes and clinical findings not supporting that diminished level of ability." (Tr. 23).  The ALJ's one-sentence explanation touched upon supportability (Dr. Dib's explanation for his findings and how consistent they were with his own objective findings) and consistency.  See 20 C.F.R. § 404.1520c(c)(1)-(2).  It is clear to the court the ALJ found Dr. Dib's opinion lacking in explanation for the limitations expressed therein and inconsistent with Dr. Dib's own objective findings as well as those of other providers.  What is not clear is how the ALJ arrived at those conclusions.  The ALJ did not explain which of Dr. Dib's treatment notes and objective findings were inconsistent with his opinion or identify with any degree of specificity what other medical evidence the ALJ believed was inconsistent with Dr. Dib's findings.  And the ALJ did not explain in what way Dr. Dib's opinion was lacking in explanation.

      The Commissioner attempts to fill in the gap in the ALJ's reasoning by arguing that check-box opinions are generally deemed unsupported by courts in this circuit and pointing to medical records from Dr. Dib and other providers that were inconsistent with Dr. Dib's opinion.  See ECF Doc. 15 at 7-9.  But the ALJ did not find that Dr. Dib's opinion was an improper check-box opinion.  Even if the court were to agree that the evidence the Commissioner cites supports the ALJ's conclusion, the ALJ did not cite or otherwise refer to that evidence in explaining why

16

he found Dr. Dib's opinion unsupported or inconsistent. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) ("[T]he courts may not accept appellate counsel's *post hoc* rationalizations for agency action … It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." (citation omitted)). Put simply, the ALJ didn't build an accurate and logical bridge between the evidence and the result, leaving it instead for this court to infer the basis for his decision. *Fleischer*, 774 Supp. 2d at 877.

Nevertheless, I find that the ALJ's failure to comply with the regulation's articulation requirements did not cause harmful error. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An error in an ALJ's evaluation of the opinion evidence may be harmless in one of three circumstances: (i) when the opinion was "so patently deficient that the Commissioner could not possibly credit it"; (ii) when the Commissioner made findings consistent with the opinion; or (iii) the Commissioner otherwise met the goals of the regulations by indirectly attacking the supportability or consistency of the opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004); *see also Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010).[6]

The first of these circumstances, to which the Commissioner alludes, applies here. Dr. Dib's opinion gave no explanation for any of his checked or fill-in-the-blank answers describing Ballard's functional limitations. (Tr. 668). Although Dr. Dib attempted to incorporate by reference his objective medical findings, the only treatment notes attached to

---

[6] While the harmless-error analysis articulated in *Wilson* concerned the pre-March 27, 2017 regulations, district courts within this circuit have applied that analysis to the post-March 27, 2017 regulations. *See Hickman v. Comm'r of Soc. Sec.*, No. 2:20-cv-6030, 2021 U.S. Dist. LEXIS 215187, at *14 n.5 (S.D. Ohio Nov. 8, 2021); *Vaughn v. Comm'r of Soc. Sec.*, No. 20-cv-1119, 2021 U.S. Dist. LEXIS 134907, at *33 n.8 (W.D. Tenn. July 20, 2021); *Burba Comm'r of Soc. Sec.*, No. 1:19-CV-905, 2020 U.S. Dist. LEXIS 179252, at *12 (N.D. Ohio Sept. 29, 2020).

17

Dr. Dib's opinion contained zero negative exam findings but merely stated a diagnosis of "Lupus arthritis" with a diagnostic code for unspecified lupus erythematosus, unspecified.[7] (Tr. 668-69). Also, that note stated the reason for Ballard's appointment that day was to "complete disability paperwork." (Tr. 669). The June 11, 2020 treatment notes also stated that Ballard had worsening severe arthralgia. *Id.* Dr. Dib's records do not indicate how Ballard's diagnosed conditions imposed any functional limitations, such as an inability to sit for even two hours with normal breaks or be absent from work over four times per month. (Tr. 668). This is especially so given that Dr. Dib's treatment notes earlier in 2020 did not even mention severe arthralgias. *See* (Tr. 633, 635, 637, 639). Dr. Dib's lack of explanation for his findings rendered his opinion patently deficient. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016); *Burgess v. Comm'r of Soc. Sec.*, No. 19-13243, 2021 U.S. Dist. LEXIS 58803, at *15 (E.D. Mich. Mar. 29, 2021); (Tr. 297); *see also Fleming v. Comm'r of Soc. Sec.*, No. 4:10-CV-25, 2011 U.S. Dist. LEXIS 81040, at *28 (E.D. Tenn. July 5, 2011). Therefore, any claimed error the ALJ may have made in evaluating Dr. Dib's opinion was harmless. *See Paradinovich v. Comm'r of Soc. Sec. Admin.*, No. 1:20-CV-1888, 2021 U.S. Dist. LEXIS 213589, at *24-25 (N.D. Ohio Sept. 28, 2021) (concluding similarly).

Because Dr. Dib's opinion could not possibly be credited, Ballard has failed to establish reversible error in the ALJ's evaluation of Dr. Dib's opinion. *Wilson*, 378 F.3d at 547. Thus, no remand is warranted based on Ballard's challenge to the ALJ's evaluation of the opinion evidence.

---

[7] https://www.icd10data.com/ICD10CM/Codes/M00-M99/M30-M36/M32-/M32.9 (last visited May 24, 2022)

18

## IV. Conclusion

Because any alleged error in the ALJ's evaluation of the opinion evidence was harmless, the Commissioner's final decision denying Ballard's applications for DIB and SSI is affirmed.

**IT IS SO ORDERED.**

Dated: May 24, 2022

Thomas M. Parker
United States Magistrate Judge